# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES HAMILTON, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:16-CV-02614 |
| | § | |
| TARGA TRANSPORT LLC and | § | |
| TARGA RESOURCES LLC, | § | |
|     Defendants/Third Party Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| TPC GROUP LLC, a/k/a/ TPC | § | |
| GROUP INC., | § | |
|     Third Party Defendant. | § | |

## <u>MEMORANDUM AND ORDER</u>

In this maritime personal injury case, the parties have filed cross-motions for summary judgment. Third-Party Defendant TPC Group LLC a/k/a TPC Group Inc. ("TPC") filed a Motion for Summary Judgment [Doc. # 21] (the "TPC Motion") with respect to the claims asserted by Defendants and Third-Party Plaintiffs, Targa Transport LLC ("Targa Transport") and Targa Resources LLC (collectively, "Targa"). Targa responded [Doc. # 22] and TPC has filed a Reply

[Doc. # 23].[1]  Also pending is a Motion for Partial Summary Judgment (the "Targa Motion") [Doc. # 25] with respect to the same claims.  TPC filed a timely response [Doc. # 26], to which Targa replied [Doc. # 27].

The motions are now ripe for decision. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that the TPC Motion should be **denied** and that the Targa Motion should be **granted in part** and **denied in part**.

## I.    BACKGROUND

### A.    Procedural Background

Plaintiff Charles Hamilton filed his original complaint (the "Original Complaint") in this case on August 29, 2016.  Original Complaint [Doc. #1].  In the Original Complaint, Plaintiff alleged that Targa and TPC were negligent and grossly negligent in connection with an accident he suffered during his employment on a barge.  Each of Targa and TPC moved to dismiss the Original

---

[1]     TPC filed its Reply one day after the Court's established deadline for doing so.  As a result, the Targa Entities filed an Objection to TPC's Reply Brief in Support of Motion for Summary Judgment (the "Objection") [Doc. # 24], requesting that the Court either decline to consider the Reply or grant the Targa Entities the opportunity to file a sur reply.  The Court does not condone TPC's failure to adhere to the Court's filing deadlines.  However, there are no adverse consequences of TPC's tardiness in this instance and Targa is not entitled to the unnecessary relief it seeks in the Objection.  The Objection is **overruled.**

Complaint.  *See* Targa's Motion to Dismiss for Failure to State a Claim [Doc. # 4]; TPC's Motion to Dismiss [Doc. # 6] (collectively, the "Motions to Dismiss").

On January 19, 2017, the Court issued a Memorandum and Order [Doc. #10] granting the Motions to Dismiss, but granted Plaintiff leave to re-plead his claims against Targa.  On February 2, 2017, Plaintiff filed an Amended Complaint [Doc. # 12] against Targa, alleging that Targa's failure to take certain precautionary measures constituted vessel negligence pursuant to 33 U.S.C. § 905(b) and that such alleged negligence was the cause of the same accident and personal injury that were the subject of the Original Complaint.

On February 24, 2017, Targa filed a Third-Party Complaint against TPC (the "Third-Party Complaint") [Doc. # 17].  Targa alleges in the Third-Party Complaint that TPC is contractually obligated, pursuant to the terms of a time charter agreement between TPC and Targa Transport, to provide Targa with "defense, indemnity and insurance cover" in connection with the claims that Plaintiff has asserted in the Amended Complaint.

Subsequently, the TPC Motion and the Targa Motion were filed.  In each case, the moving party seeks summary judgment on the question of TPC's obligation to indemnify and defend Targa against Plaintiff's claims in the Amended Complaint.

## B.    Factual Background

On January 24, 2015, the barge CHEROKEE (the "Barge"), which is owned by one of the Targa entities, was docked at a facility owned by TPC. While the Barge was docked, Plaintiff, a tankerman employed by non-party SGS North America, was "performing his tankerman duties and loading [the Barge] up with liquid C4." Amended Complaint, ¶ 9. Plaintiff alleges that as he "was coming down the stairs from the digital gauging station on the [Barge] to the deck, he slipped and fell due to frost on the deck," which resulted in "severe injuries to his body, including his head, neck and back." *Id.* at ¶¶ 10, 12. Plaintiff alleges further that his injuries were a result of Targa's failure to provide a safe place to work, including Targa's failure to ensure that the Barge had proper "non-skid and precautionary measures" in place. *Id.* at ¶¶ 16-17.

The Barge was docked at TPC's facility on the date of Plaintiff's accident pursuant to a time charter agreement (the "Time Charter").[2] As between TPC and Targa, there is no dispute that Plaintiff suffered his accident while loading Cargo (as defined in the Time Charter) into the Barge. Section 13.1(a) of the Time

---

[2]    The initial parties to the Time Charter, which was effective as of March 1, 2009, were Targa Midstream Services Limited Partnership and Texas Petrochemicals LLC. Time Charter [Doc. # 25-2], at ECF 4. As a result of a series of assignments and entity mergers, the details of which are not relevant here, Targa Transport and TPC are the current parties to the Time Charter, with Targa Transport as "Owner" and TPC as "Charterer."

Charter addresses TPC's indemnification obligations to Targa relating to the loading of Cargo into the Barge, and states:

> **CHARTERER AGREES TO DEFEND, INDEMNIFY AND HOLD OWNER, ITS PAST, PRESENT, AND FUTURE SHAREHOLDERS, OFFICERS, DIRECTORS, AGENTS, SERVANTS, EMPLOYEES, AFFILIATES, AND CONTRACTORS (INCLUDING ALL VESSELS) AND THEIR RESPECTIVE INSURERS (COLLECTIVELY, THE OWNER INDEMNIFIED PARTIES) HARMLESS AGAINST ALL CLAIMS FOR DAMAGES FOR PERSONAL INJURY, DEATH, PROPERTY DAMAGE, AIR OR WATER POLLUTION, FINES, PENALTIES OR ASSESSMENTS ARISING OUT OF OR CONNECTED TO THE LOADING, UNLOADING OR DISCHARGE OF CARGO WHETHER SUCH CLAIM IS IN TORT, CONTRACT, OR STRICT LIABILITY OF ANY SORT**.

Time Charter [Doc. # 25-2], §13.1(a), at ECF 12.

## II.  SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  FED. R. CIV. P. 56(a); *see Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).  "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

"Contract interpretation, including the question of whether a contract is ambiguous, is a question of law." *East v. Premier, Inc.*, 98 F. App'x 317, 319 (5th Cir. 2004).  *See McLane Foodservice, Inc. v. Table Rock Restaurants, L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013); *Instone Travel Tech Marine & Offshore v. International Shipping Partners, Inc.*, 334 F.3d 423, 428 (5th Cir. 2003).

## III.  ANALYSIS

There is no dispute between the parties that the Time Charter is the operative agreement governing TPC's and Targa's respective rights and obligations in this case.  Rather, the parties' disagreement pertains to a single issue of contract interpretation: does the Time Charter require TPC to defend and indemnify Targa for Targa's own alleged negligence that resulted in Plaintiff's accident?  For the following reasons, the Court concludes that it does.

### A. Legal Standard for Indemnifying an Indemnitee for Its Own Negligence Under General Maritime Law

The governing law of the Time Charter is "the General Maritime Law of the United States and, to the extent of matters not provided therein, the laws of the State of Texas." Time Charter [Doc. # 25-2], at ECF 19. The parties agree that, pursuant to Section 17.1 of the Time Charter, general maritime law governs this dispute. "[U]nder general maritime law, indemnification for an indemnitee's own negligence must be 'clearly and unequivocally expressed.'" *East v. Premier, Inc.*, 98 F. App'x 317, 319 (5th Cir. 2004) (quoting *Seal Offshore, Inc. v. American Standard, Inc.*, 736 F.2d 1078, 1081 (5th Cir. 1984). In adopting the "clearly and unequivocally" test, general maritime law has rejected the "express negligence test," "which requires an indemnity provision to expressly state whether a party is to be indemnified for its own negligence."[3] *Id.* (citing *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 540-41 (5th Cir. 1986). "A duty to indemnify in a given situation will exist if the parties' intention for a particular indemnification can reasonably be inferred from the language of a contract, even in the absence of an express provision." *Id.* (citing *Corbitt v. Diamond M. Drilling Co.,* 654 F.2d 329, 333 (5th Cir. 1981)); *see also Int'l Marine, L.L.C. v. Integrity Fisheries, Inc.*, 860

---

[3] As such, TPC's numerous citations in its briefing to cases involving the "express negligence test" under Texas state law are not relevant to the dispute currently before the Court.

F.3d 754, 759 (5th Cir. 2017) ("an indemnity contract covers losses within the contemplation of the parties but not those which are 'neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage,'") (quoting *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981)).

## B. Section 13.1(a) of the Time Charter Provides Indemnity for Negligence Claims

TPC's first argument that it is not required to defend and indemnify Targa in this case is that the "claim in tort, contract or strict liability of any sort" language in Section 13.1(a) of the Time Charter, does not cover negligence-based claims, such as the claims asserted by Plaintiff in the Amended Complaint. In support of its assertion, TPC contends that the absence of the term "negligence" (or any variation thereof) in Section 13.1(a), while such term is specifically included in Sections 13.1(b)-(d)[4] of the Time Charter, evidences the parties' intent to exclude the concept of negligence from Section 13.1(a). TPC argues further that the same intent to exclude negligence from Section 13.1(a) is shown by the parties' grouping the terms "tort," "contract," and "strict liability" together in that section. The Court does not find either of these arguments persuasive.

---

[4]    Section 13.1(d) is reproduced in full on pages 18-19 below.

Of Section 13.1's four subparagraphs, TPC correctly notes that only Section 13.1(a) does not explicitly use the term negligence. In Section 13.1(b), Targa's indemnity to TPC for claims arising out of or related to the transportation of Cargo" is limited to the "extent of the negligence or willful misconduct of Owner."[5] Time Charter [Doc. # 25-2], at ECF 12. In Section 13.1(c), TPC's indemnity to Targa for the same set of claims (*i.e.*, those arising from or related to the transportation of Cargo) is similarly limited to the "extent of Charterer's negligence, willful misconduct, or statutory liability." *Id*. Therefore, the parties used the term "negligence" in Sections 13.1(b) and (c) as a means to limit the scope of those respective indemnities to a few specific causes of action.

By its plain language, however, Section 13.1(a) is significantly more inclusive in scope than the indemnities in Sections 13.1(b) and (c). The indemnity in Section 13.1(a) is not limited by the same "to the extent" language that appears in Sections 13.1(b) and (c), and instead uses the more encompassing phrase "whether such claim is in tort, contract or strict liability of any sort."[6]

---

[5]    Section 13.1(b) also states that "[t]his indemnity shall not apply to the extent of Charterer's negligence or willful misconduct." As discussed in Section 3C, *infra*, this language is persuasive evidence that the parties intended that TPC would indemnify Targa for Targa's own negligence for claims arising from or connected to the loading of Cargo into the Barge.

[6]    *Compare* Section 13.1(a) (covering "all claims . . . whether such claim is in tort, contract or strict liability of any sort"); Section 13.1(b) (covering "all claims . . . to the extent of the negligence or willful misconduct of owner and/or its tow, master

(continued…)

Moreover, instead of limiting Section 13.1(a) to a few specific causes of action, the parties expressly agreed that Section 13.1(a) would apply to three broad categories of causes of action: those in tort, contract and strict liability. It is beyond question that one of those broad categories, tort, includes negligence. *See Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 421 (2009) ("[t]he general maritime law has recognized the tort of negligence for more than a century") (quoting *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 820 (2001); *Rose v. Sherman*, No. 5:12-CV-239-C, 2015 WL 13261882, at *5 (N.D. Tex. Apr. 16, 2015), *aff'd*, 676 F. App'x 258 (5th Cir. 2017) ("Instead, negligence is a tort under state law . . ."). As the concept of negligence is already included within Section 13.1(a)'s broad scope, the absence of its specific mention is best understood as the parties' attempt to avoid unnecessary or duplicative language, not as evidence of the parties' intent to exclude negligence from Section 13.1(a)'s wide purview.[7]

---

(continued…)
or crew."); Section 13.1(c) (covering "all claims . . . to the extent of Charterer's negligence, willful misconduct, or statutory liability."). Time Charter [Doc. # 25-2], at ECF 12.

[7] Section 13.1(d), a damages limitation provision within the Time Charter's indemnity section, also uses the term "negligence." Under Section 13.1(d), for claims between TPC and Targa Transport that do not involve third parties, the liability of an indemnitor to an indemnitee is limited to exclude certain types of damages, such as consequential or punitive damages. Time Charter [Doc. # 25-2], at ECF 12-13. Those limitations apply to an indemnitor even if "such damages are caused by the negligence" of the indemnitor. *Id.* TPC fails to explain persuasively how the use of the term "negligence" to clarify the scope of damages
(continued…)

TPC also asserts that application of the maxim *noscitur a sociis* (a word is known by the company it keeps) to the phrase "tort, contract or strict liability of any sort," establishes that in the context of Section 13.1(a), the word "tort" only refers to "liabilities without fault." Reply [Doc. #23], at ECF 2-5. This argument lacks merit. Even assuming the validity of TPC's questionable underlying premise that contractual liability, like strict liability, is a "species of liability that require[s] no wrongdoing to trigger liability," *id*. at 4, TPC's assertion nevertheless fails because it would render the term "tort" in Section 13.1(a) meaningless. TPC does not explain how if the term "tort" is only understood to mean "liabilities without fault," the term differs in any meaningful way from "strict liability."[8] TPC's

_____

(continued…)

an indemnitor may be liable for is evidence that the parties intended to exclude the concept of negligence from Section 13.1(a), which as discussed above, plainly includes such concept by the phrase "claims in tort." TPC's argument is particularly unavailing in this instance because Section 13.1(d) and its clarification that an indemnitor's liability for damages will be limited, even if those damages results from its negligence, applies to Section 13.1(a). The fact that the parties did not carve out Section 13.1(a) from the negligence clarification in Section 13.1(d), which carve out would be appropriate if Section 13.1(a) did not extend to negligence-based claims as TPC suggests, only further supports the conclusion that a claim for negligence is within Section 13.1(a)'s scope.

[8]  Black's Law Dictionary defines "strict liability" as "[l]iability that does not depend on proof of negligence or intent to do harm but that is based instead on a duty to compensate the harms proximately caused by the activity or behavior subject to the liability rule." BLACK'S LAW DICTIONARY (10th ed. 2014). Perhaps equally significant, in its definition of "tort," Black's Law Dictionary notes that:

(continued…)

proffered interpretation of "tort" would, at a minimum, render the term superfluous in Section 13.1(a). The Court accordingly rejects TPC's argument. *See Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004) ("A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous.") (citing *Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349, 354 (5th Cir. 2004); *Capozziello v. Brasileiro*, 443 F.2d 1155, 1159 (2d Cir. 1971)). Negligence claims are included in the indemnity provision of Section 13.1(a).[9]

---

(continued…)
> Tortious conduct is typically one of four types: (1) a culpable or intentional act resulting in harm; (2) an act involving culpable and unlawful conduct causing unintentional harm; (3) a culpable act of inadvertence involving an unreasonable risk of harm; and (4) a nonculpable act resulting in accidental harm for which, because of the hazards involved, the law imposes strict or absolute liability despite the absence of fault. *Id.*

If, as TPC argues, the term "tort" in Section 13.1(a) only refers to liability without fault (*i.e.*, liability stemming from a non-culpable act), the only type of tort that would not be eliminated from the definition in Black's Law Dictionary would be those in category (4): strict or absolute liability torts. Claims for such torts, however, are already provided for by the "or strict liability of any sort" language in Section 13.1(a).

[9] An additional consequence of accepting TPC's interpretation of "tort, contract, or strict liability of any sort" would be that Targa would not have an indemnification claim against TPC for any negligent or intentional act by TPC. TPC cites no summary judgment evidence, authority or other provision of the Time Charter that would support such a narrow and limiting view of Section 13.1(a). TPC's argument is particularly unpersuasive given that the indemnity in Section 13.1(a)

(continued…)

### C. The Time Charter Clearly and Unequivocally Provides that TPC Is Required to Indemnify Targa for Targa's Own Negligence in Connection with Plaintiff's Personal Injury Claim

Plaintiff's claims against Targa allege negligence in connection with the loading of Cargo into the Barge that resulted in personal injury. Because the indemnity in Section 13.1(a) covers negligence claims, Plaintiff's claims plainly fall within its scope. The key inquiry then is whether the Time Charter "clearly and unequivocally" provides for TPC to defend and indemnify Targa for Targa's own alleged negligence that precipitated Plaintiff's claims.

In support of Targa's argument that that the Time Charter clearly and unequivocally provides for TPC to defend and indemnify it for its own negligence, Targa cites the Fifth Circuit's decision in *East v. Premier, Inc.* 98 F. App'x 317 (5th Cir. 2004). In *East*, the Fifth Circuit analyzed whether a contract without an explicit provision requiring the indemnitor to indemnify the indemnitee for the indemnitee's own negligence satisfied the "clearly and unequivocally" test. The Fifth Circuit concluded that the liability provisions of the underlying agreement, read collectively, provided for such an indemnity.

---

(continued…)
is broader than the indemnities in Sections 13.1(b) and (c), both of which cover claims for negligence and willful misconduct, a species of intentional wrongdoing.

P:\ORDERS\11-2016\2614MSJ.docx  171012.1114

The agreement language that the Fifth Circuit found passed muster was a synthesis of two different but related liability provisions in the agreement. That language was that the indemnitor "shall be responsible for all . . . causes of action of every kind . . . arising in connection herewith . . . of . . . [indemnitor]'s invitees on account of bodily injury . . . without regard to cause." *East*, 98 F. App'x at 321. The Fifth Circuit went on to explain that the synthesized language satisfied the "clearly and unequivocally" test because "the phrase 'responsible for . . . all causes of action . . . arising in connection [with] . . . [indemnitor]'s invitees on account of bodily injury' addresses the concern of what specific type of cause of action is to be covered, such as injury due to negligence," and the phrase "without regard to cause," a key phrase in the decision,[10] "addresses the concern of identifying whom the previous language is to apply; here, neither the [indemnitor], nor the [indemnitee]." *Id*.

Targa's reliance on *East* in this case is persuasive. In *East*, the clear and unequivocal test was satisfied by use of the phrase "without regard to cause." Targa identifies additional language in the Time Charter that, when viewed in its totality, is functionally equivalent to the "without regard to cause" language in

---

[10]    *See id*. at 321 ("The question we must answer then is whether the phrase without regard to cause satisfies the clear and unequivocal test.") (internal quotation marks omitted).

*East*.[11]  Targa first points to language in Section 5 of the Time Charter, which states in relevant part that: "The Cargo shall be loaded and unloaded into the Barges at the expense, risk and peril of Charterer."  The Fifth Circuit has held, in the context of a time charter agreement, that language requiring the charterer to perform all cargo handling at its "risk and expense" "acts as an indemnification clause between the owner and the time charterer."  *Robinson v. Orient Marine Co., Ltd.,* 505 F.3d 364, 366 (5th Cir. 2007).  The Time Charter at issue here uses the more robust language of "expense, risk and peril."

Although there is no case law that supports the conclusion that the stand-alone phrase "expense, risk and peril" in Section 5 of the Time Charter satisfies the clear and unequivocal test, that language in context is persuasive evidence of the

---

[11]  In the Response [Doc. # 22] and in the Targa Motion [Doc. # 25], Targa also asserts that the phrase "whether such claim is in tort, contract or strict liability of any sort" in Section 13.1(a) of the Time Charter serves the "same role as the 'without cause' language in East."  Response [Doc. # 22], at EFC 8; Targa Motion [Doc. # 25], at ECF 9.  Specifically, Targa argues that "whether such claim" language "address[es] the concern of what specific type of cause of action is to be covered by the indemnity obligation."  *Id.*

That argument, however, is off the mark.  The Fifth Circuit held in *East*, as discussed above, the language "responsible for . . . all causes of action . . . arising in connection [with] . . . [indemnitor]'s invitees on account of bodily injury" addressed the type of cause of action to be covered.  The "without regard to cause" language in *East* addressed the materially different issue of whether a party's responsibility for causing or bringing about the underlying incident resulting in a plaintiff's claim affects that same party's right to indemnification. Consequently, Targa's argument in this regard lacks merit.

parties' agreement about the allocation of risk on claims stemming from loading Cargo into the Barge.  As discussed above, Section 13.1(a) already provides Targa with a broad indemnity from TPC for claims arising out of or connected to loading Cargo into the Barge.  The phrase "expense, risk and peril" in Section 5 must mean something more than a simple indemnity from TPC to Targa Transport with respect to loading Cargo, or that language would be superfluous as merely redundant of Section 13.1(a).  When the Time Charter is considered as a whole, the phrase "expense, risk and peril" in Section 5 is most reasonably interpreted as emphasizing the parties' understanding that TPC would bear *all* risks arising out of or connected to the loading of Cargo into the Barge, including the risk of Targa's own negligence.  Such an interpretation gives content to the phrase "expense, risk and peril" without rendering another provision of the Time Charter surplusage.

Interpreting the combination of the "expense, risk and peril" language in Section 5 with the broad indemnity in Section 13.1(a) as evidence that the Time Charter clearly and unequivocally requires TPC to indemnify Targa for its own negligence in this case is also consistent with how the parties structured the other indemnification provisions in the Time Charter.  Whereas Section 13.1(a) pertains to indemnity "arising out of or connected to the loading, unloading or discharge of cargo," Section 13.1(b) addresses the different situation of indemnity for claims "arising out of or related to the transportation of Cargo."  Section 13.1(b) provides:

**OWNER AGREES TO DEFEND, INDEMNIFY AND HOLD CHARTERER, ITS PAST, PRESENT, AND FUTURE SHAREHOLDERS, OFFICERS, DIRECTORS, HARMLESS AGAINST ALL CLAIMS FOR DAMAGES FOR PERSONAL INJURY, DEATH, PROPERTY DAMAGE, AIR OR WATER POLLUTION, FINES, PENALTIES OR ASSESSMENTS ARISING OUT OF OR RELATING TO THE TRANSPORTATION OF CARGO, INCLUDING BUT NOT LIMITED TO THE GOOD WORKING ORDER OF THE BARGE, <u>TO THE EXTENT OF THE NEGLIGENCE OR WILFUL MISCONDUCT OF OWNER AND/OR ITS TOW, MASTER OR CREW. THIS INDEMNITY SHALL NOT APPLY TO THE EXTENT OF CHARTERER'S NEGLIGENCE OR WILLFUL MISCONDUCT</u>.**

Time Charter [Doc. # 25-2], § 13.1(b), at ECF 12 (emphasis added).

Section 13.1(c) of the Time Charter also addresses indemnity in the Cargo transportation context and states:

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN SECTION 13.1(B), CHARTERER AGREES TO DEFEND, INDEMNIFY AND HOLD THE OWNER INDEMNIFIED PARTIES HARMLESS AGAINST ALL CLAIMS FOR DAMAGES FOR PERSONAL INJURY, DEATH, PROPERTY DAMAGE, AIR OR WATER POLLUTION, FINES, PENALTIES OR ASSESSMENTS ARISING OUT OF OR RELATED TO THE TRANSPORTATION OF CARGO <u>TO THE EXTENT OF CHARTERER'S NEGLIGENCE, WILLFUL MISCONDUCT, OR STATUTORY LIABILITY</u>.**

*Id*. § 13.1(c), at ECF 12 (emphasis added).

In Sections 13.1(b) and (c), the parties explicitly established that for claims "arising out of or related to the transportation of cargo," the indemnitor, regardless of whether it is the "Owner" or the "Charterer," is not responsible to defend or

17

indemnify the indemnitee for the indemnitee's own negligence.  As such, it is clear that the possibility of an indemnitee seeking indemnification for its own negligence was plainly contemplated by the parties to the Time Charter.  The parties thus demonstrated their capability to address that issue and actually reached an agreement as to how to do so.  The inclusion of an explicit limitation on indemnification for an indemnitee's own negligence in Section 13.1(b) and the absence of such a limitation in the broader indemnity in Section 13.1(a) is compelling evidence that the parties understood that TPC would indemnify Targa for Targa's own negligence for claims, such as a Plaintiff's claim, that arise out of or are connected to the loading of Cargo into the Barge.

The parties' use of the phrase "even if such damages are caused by the negligence of any party whose liability is limited hereby" in Section 13.1(d) does not, as TPC asserts, compel a different conclusion.  Section 13.1(d) states:

**NOTWITHSTANDING ANY OTHER PROVISION IN THIS CHARTER, NEITHER PARTY SHALL BE RESPONSIBLE OR LIABLE TO THE OTHER, OR TO ANY INDEMNITEE, FOR LOST PROFITS OR LOST BUSINESS OPPORTUNITIES, ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAGAMES ARISING OUT OF THIS CHARTER OR ANY BREACH HEREOF, REGARDLESS OF THE CAUSES OF SAME, EVEN IF SUCH DAMAGES ARE CAUSED BY THE NEGLIGENCE OF ANY PARTY WHOSE LIABILITY IS LIMITED HEREBY OR IN LIABILITY WITHOUT FAULT IS SOUGHT TO BY IMPOSED UPON ANY PARTY, PROVIDED HOWEVER, THAT IS ANY INDEMNITEE IS HELD LIABLE TO A THIRD PARTY FOR ANY DAMAGES THAT ARE WITHIN THE SCOPE OF ANY INDEMNITY GIVEN BY A**

**PARTY UNDER THIS AGREEMENT, THE PARTY OBLIGATED UNDER THE APPLICABLE INDEMNITY WILL BE LIABLE FOR SUCH DAMAGES.**

*Id.* § 13.1(c), at ECF 12-13.

TPC argues that Sections 13.1(a) and 13.1(d) are "parallel provisions," and that the inclusion of a clarification regarding the effects of negligence in the latter implies that the parties would have included explicit language about indemnification for an indemnitee's own negligence in the former if the parties had wanted to achieve that result. Reply [Doc. # 23], at ECF 2-3. The Court is unconvinced.

Section 13.1(d) provides that for indemnity claims between TPC and Targa where no third party is involved, the types of damages for which an indemnitor is potentially liable to the indemnitee are limited.[12] These limitations apply even if the underlying damages were the result of the indemnitor's negligence. Unlike Sections 13.1(b) and (c), which expressly address indemnification for an *indemnitee's* own negligence, Section 13.1(d) only addresses the consequences of an *indemnitor's* negligence. Furthermore, unlike Section 13.1(a) (or Sections 13.1(b)-(c)), Section 13.1(d) says nothing about the types of underlying claims for

---

[12]    If Section 13.1(d) applies, an indemnitor will not be liable to an indemnitee for lost profits, lost business opportunities, special, incidental, consequential or punitive damages. Time Charter [Doc. # 25-2], at ECF 12-13.

which each party has agreed to indemnify the other. Instead, under a specific set of facts not relevant here (*i.e.*, a claim for indemnification involving no third party), Section 13.1(d) merely limits the types of damages an indemnitor may be liable for in connection with a claim that falls within the scope of Sections 13.1(a)-(c). Sections 13.1(a) and 13(d) are not "parallel provisions." They address fundamentally different points about the parties' liability and are conceptually distinct from one another. As such, the parties' use of the clarifying phrase "even if such damages are caused by the negligence of any [indemnitor]" in Section 13.1(d) does not support the reasonable inference that had the parties intended the indemnity in Section 13.1(a) to cover the indemnitee's own negligence they would have included specific language to that effect.

In summary, when read as a whole, the language used by the parties in the Time Charter satisfies the clear and unequivocal test. *See Becker v. Tidewater, Inc.*, 586 F.3d 358, 369 (5th Cir. 2009) ("A maritime contract containing an indemnity agreement . . . should be read as a whole and its words given their plain meaning unless the provision is ambiguous."). Although there is no language explicitly requiring TPC to indemnify Targa for its own negligence, explicit language is not required in the Fifth Circuit for satisfaction of the maritime law clear and unequivocal test. *See East*, 98 F. App'x at 321–22 ("requiring a statement that included the phraseology "[TPC] will indemnify [Targa] for its own

negligence" would in effect be applying the 'express negligence test,' which . . . has not been adopted by general maritime law.") (citing *Theriot*, 783 F.2d at 540-41). Based on the combination of TPC's agreement in Section 5 to load Cargo into the Barge at its "expense, risk and peril," the broad Cargo-related indemnity TPC agreed to provide to Targa in Section 13.1(a), and the lack of an explicit carve out for indemnitee negligence in Section 13.1(a), such as the one the parties included in Section 13.1(b), the Court concludes that the Time Charter clearly, unequivocally and unambiguously[13] expresses the parties' agreement that TPC would defend and indemnify Targa against Plaintiff's claims in this case, even if those claims arose from Targa's own negligence. S*ee Orduna S.A. v. Zen–Noh*

---

[13]     In connection with its own motion for summary judgment, TPC argued that if the Time Charter does not fail the clear and unequivocal test as a matter of law, it is ambiguous regarding the parties' intent for TPC to indemnify Targa for Targa's own negligence.  Reply [Doc. # 6-7].  "A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation."  *East*, 98 F. App'x at 319 (citing *Reliant Energy Services, Inc. v. Enron Canada Corp.*, 349 F.3d 816, 2003 WL 22439846, *3 (5th Cir. 2003); *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)).  "If any ambiguity exists in a contract, 'a fact issue remains regarding the parties' intent,' thus precluding a grant of summary judgment."  *Id.* (citing *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 431 (5th Cir. 2003)).  For the reasons stated above, the Court concludes that on the issue of whether TPC has agreed to indemnify Targa for its own negligence, the Time Charter is not reasonably susceptible to more than one interpretation: it clearly and unequivocally demonstrates that TPC agreed to provide Targa with such an indemnity.  As such, the Court concludes that TPC's argument that the Time Charter is ambiguous is without merit.

*Grain Corp.*, 913 F.2d 1149 (5th Cir. 1990) ("Before enforcing an indemnification clause for an indemnitee's own negligence, a court must be firmly convinced that the exculpatory provision reflects the intention of the parties.").

**D.    TPC's Obligation to Defend Targa is Governed Solely by Section 13.2 of the Time Charter**

Finally, Targa asserts that Section 13.1(a) requires TPC to both "defend" and "indemnify" Targa for claims covered by Section 13.1(a), and thus TPC is obligated to assume Targa's defense on an "ongoing basis," rather than simply reimburse Targa at some point in the future for any attorneys' fees or costs Targa incurs defending itself against Plaintiff's claims.   Targa Motion [Doc. # 25], at ECF 12-14.  TPC does not contest this point in its briefing.

Section 13.2 of the Time Charter sets forth how the parties agreed to handle the defense of "Third Person Claims," such as Plaintiff's claims against Targa in this case.   Specifically, Section 13.2(c) provides that an indemnitor [TPC], after receiving notice of a third party claim from an indemnitee, has the "sole and absolute right" "at its option and at its own expense, to be represented by counsel of its choice and to control, defend against, negotiate and otherwise deal with any proceeding, claim, or demand" related to the indemnified loss or liability.   Time Charter [Doc. # 25-2], §13.2, at ECF 13 (emphasis added).  If the indemnitor elects to control the defense, the indemnitee [Targa] "may participate in any such proceeding with counsel of its choice and at its expense."   *Id.*   If the indemnitor

does not assume control of the defense of a third party claim and the indemnitee "defends against or otherwise deals" with such a claim, the indemnitee "may retain counsel, at the expense of the [i]ndemnitor, and control the defense of such" claim. *Id.* at 13-14. Section 13.2 thus addresses under what circumstances the indemnitor or the indemnitee controls the defense and who bears responsibility for the reasonable fees and expenses of defense counsel and, as such, is controlling on this issue. To the extent that Targa is asking the Court to hold that TPC owes it defense obligations that are beyond or in conflict with what the parties have agreed to in Section 13.2 of the Time Charter, that request is without merit and is **denied**.[14] Nevertheless, TPC must inform Targa and the Court through a sealed

---

[14] Furthermore, to the extent that Targa is requesting summary judgment that it is entitled to be indemnified for the fees and expenses it has incurred in establishing its right to indemnification under Section 13.1(a) of the Time Charter, that request is also **denied**. "Although a general indemnity provision typically includes recovery of attorneys' fees incurred in defending against a claim covered by the indemnity provision, 'the indemnitee enjoys no right to recover its legal fees incurred in establishing its right to indemnification.'" *Becker*, 586 F.3d at 375 (quoting *Dow Chem. Co. v. M/V ROBERTA TABOR*, 815 F.2d 1037, 1042 (5th Cir. 1987). As Section 13.1(a) is a general indemnity clause, *id.*, and does not specifically provide for recovery of attorneys' fees in enforcing the indemnity provision, the prohibition barring the recovery of legal fees incurred in establishing a right to indemnification applies.

In the TPC Motion, TPC also seeks summary judgment that it is not in breach of the Time Charter's insurance requirement provisions and that Targa is not an additional insured under certain of TPC's insurance policies that relate to the Time Charter. TPC Motion [Doc. # 21], at ECF 12-17. TPC did not reply to Targa's response to these points and did not address them in its response to the Targa Motion. The issues on the scope of the Time Charter's insurance requirements

(continued…)

advisory on or before October 31, 2017, whether TPC will assume Targa's defense.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, it is hereby

**ORDERED** that TPC's Motion for Summary Judgment [Doc. # 21] is **DENIED**.  It is further

**ORDERED** that Targa's Motion for Partial Summary Judgment [Doc. # 25] is **GRANTED** to the extent that Targa seeks summary judgment that TPC is obligated to defend and indemnify Targa against Plaintiff's claims in the Amended Complaint pursuant to Section 13.1(a) of the Time Charter.  In all other respects, Targa's Motion for Partial Summary Judgment is **DENIED**.  It is further

**ORDERED** that TPC shall file a sealed advisory on or before **October 31, 2017**, indicating whether it will assume Targa's defense in this case.

SIGNED at Houston, Texas, this 12<u>th</u> day of **October, 2017**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

---

(continued…)
(and the scope of the policies TPC obtained pursuant thereto) are moot in light of the Court's conclusion that Targa may rely on TPC's indemnity obligations in the Time Charter.