# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES HAMILTON, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:16-CV-2614 |
| | § | |
| TARGA TRANSPORT LLC, | § | |
| TARA RESOURCES LLCA, and | § | |
| TPC GROUP INC., | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Currently pending before the Court in this vessel negligence case is Defendants Targa Transport LLC and Targa Resources LLC's (collectively, "Targa") Motion for Summary Judgment on all of Plaintiff's Claims (the "SJ Motion") [Doc. # 41]. Plaintiff Charles Hamilton filed a timely response, to which Defendant replied. *See* Plaintiff's Opposition to Targa's Motion for Summary Judgment (the "Response") [Doc. # 43] and Targa's Reply to Plaintiff's Opposition to the SJ Motion (the "Reply") [Doc. # 44]. Also pending before the Court is Targa's Motion to Exclude the Opinions of Henry Woods, Plaintiff's Purported Marine Expert (the "Exclusion Motion," and, together with the SJ

Motion, the "Motions") [Doc. # 45].[1] The Motions are now ripe for decision. Having considered the parties' briefing, the applicable legal authorities, and all appropriate matters of record, the Court concludes that both the SJ Motion and the Exclusion Motion should be **granted**.

## I.     BACKGROUND

Unless otherwise indicated, the following facts are not in genuine dispute for purposes of Targa's Motions.

Defendant Targa Transport LLC is the owner of the barge CHEROKEE. Subsequent references in this Memorandum and Order to "Targa" refer only to Defendant Targa Transport LLC.[2]  On January 23 and 24, 2015, the CHEROKEE was docked at a facility owned and operated by Defendant TPC Group Inc. ("TPC")[3] near Houston, Texas.

---

[1]     Plaintiff filed a response to the Exclusion Motion.  *See* Plaintiff's Response to Targa's Motion to Exclude Opinions of Henry Woods [Doc. # 46].  Targa did not file a reply and the deadline to do so has expired.

[2]     Plaintiff's negligence claims against Targa are premised on ownership of the CHEROKEE.  The parties do not dispute that Motion should be granted with respect to all claims against Defendant Targa Resources LLC, which does not own the vessel.  *See* Response [Doc. # 43], p.1 ("Defendants' Motion admits Targa Transport is the Owner.  Plaintiff does not oppose this Court granting summary judgment as to Targa Resources." (emphasis in original omitted)).  Accordingly, the SJ Motion is **granted** with respect to all of Plaintiffs claims against Defendant Targa Resources LLC.  All such claims are **dismissed with prejudice**.

[3]     In his original complaint, Plaintiff asserted claims for negligence and gross negligence against TPC.  By Memorandum and Order [Doc. # 10], dated January
(continued…)

Plaintiff is a tankerman with responsibility for loading and unloading cargo onto barges such as the CHEROKEE. Prior to January 2015, Plaintiff had been working as a tankerman for 15 years. During his tenure as a tankerman, Plaintiff had experience loading and unloading various types of cargo, including oils, chemicals and water. Plaintiff also had experience working as a tankerman in different climates and in different geographies, including cold weather ports and the Gulf of Mexico. In January 2015, Plaintiff was an employee of non-party SGS.

On January 23, 2015, Plaintiff arrived at the CHEROKEE between 8:00 and 9:00 p.m. to begin his tankerman duties. When Plaintiff arrived, he relieved another tankerman, who had supervised the loading of approximately half of the cargo that the CHEROKEE was scheduled to take on. Plaintiff began his job by conducting a walk-around inspection of the barge. He has no recollection of seeing frost on the deck of the barge or writing down any hazardous conditions during his inspection.

---

(continued…)
19, 2017, the Court dismissed all claims against TPC with prejudice on the basis that TPC owed no duties to Plaintiff, who was injured on the CHEROKEE, and not on dock owned by TPC. TPC remains a party to this case by virtue its contractual obligation to indemnify Targa against Plaintiff's claims in this case. *See* Memorandum and Order [Doc. # 28], dated October 12, 2017 (granting Targa's motion for summary judgment on the question of whether the time charter agreement between TPC and Targa required TPC to indemnify and defend Targa against the claims Plaintiff asserts in his amended complaint in this case).

At approximately 2:00 a.m. on January 24, 2015, Plaintiff slipped and fell on the deck of the CHEROKEE after climbing down stairs he had accessed for the purpose of checking the barge's cargo level. Prior to his accident, Plaintiff had gone up and down those same stairs at least three separate times without incident. According to Plaintiff, the temperature, which had decreased gradually from the time he arrived at work, was in the "low 30s" at the time of his accident.

After his fall, Plaintiff stood up and looked down at the deck with his SGS-issued flashlight. Plaintiff contends he saw frost on the deck, but did not see any non-skid coating or material on the deck's surface.

## II.    **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)). If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's

burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002), *overruled in part on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts that show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412–413). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.  *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter–Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).  A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.  *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Finally, although the Court may consider all materials in the record when deciding a summary judgment motion, "the court need consider only the cited materials." FED. R. CIV. P. 56(c)(3). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.  Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotation marks omitted).

## III.  <u>ANALYSIS</u>

Plaintiff asserts a single cause of action against Targa in his complaint: vessel negligence pursuant to Section 905(b) of the Longshore and Harbor Workers Compensation Act ("LHWCA").[4]   "It is now well accepted that shipowners owe three narrow duties to longshoremen: (1) a turnover duty, (2) a duty to exercise reasonable care in the areas of the ship under the active control of the vessel, and (3) a duty to intervene."  *Kirksey v. Tonghai Mar.*, 535 F.3d 388, 391 (5th Cir. 2008) (citing *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 98 (1994)).   These three duties, which trace their origins to the seminal case of *Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156 (1981), collectively are known as the *Scindia* duties.  The Court addresses the merits of Plaintiff's claims with respect to each duty in turn.

### A.    Turnover Duty

The first *Scindia* duty, the turnover duty, applies to the shipowner's obligation before or at the commencement of the stevedore's activities.  *Kirksey v. Tonghai Mar.*, 535 F.3d 388, 392 (5th Cir. 2008).  It consists of two distinct, but related obligations.  First, the owner owes a duty to exercise ordinary care under the circumstances to turn over the ship and its equipment in such condition that an expert and experienced stevedore can carry on stevedoring operations with

---

[4]      Plaintiff's First Amended Complaint [Doc. # 12], ¶ 15.

reasonable safety. *Id.* Second, the owner owes a duty to warn the stevedore of latent or hidden dangers that are known to the vessel owner or should have been known to it. The duty to warn of hidden dangers, however, is a narrow one. It does not include dangers which are either: (1) open and obvious or (2) dangers a reasonably competent stevedore should anticipate encountering. *Id.*[5]

In his deposition and pleadings, Plaintiff identifies three potential sources of a turnover duty breach by Targa: the presence of frost on the deck where Plaintiff fell, insufficient lighting on the CHEROKEE, and the absence of non-skid material in the area where Plaintiff suffered his accident. The Court considers these assertions seriatim.

### 1. Frost on the CHEROKEE's Deck

Plaintiff testified at his deposition that after slipping and falling, he stood up, looked down, and saw frost on the deck.[6] A necessary predicate to establishing a breach of the turnover duty is evidence that the alleged danger or harmful condition existed "before or at the commencement of the stevedore's activities."

---

[5] The defense that a danger was "open and obvious" also applies with respect to the first turnover duty. *See Kirksey*, 535 F.3d at 395 ("Given the *Howlett* Court's clear language strictly limiting the vessel's turnover duty to warn to latent defects and dangers, it makes no sense to say that the vessel is nevertheless liable to the longshoremen for breach of the duty to turnover a safe ship based on an obvious defect against which it had no duty to warn.").

[6] Hamilton Dep. [Doc. # 41-2], 92:24-93:03.

Assuming *arguendo* the presence of frost on the deck of a barge in winter time is a hazard or danger, Plaintiff cites no evidence from which a reasonable fact finder could conclude that there was any frost on the CHEROKEE before or at the commencement of the stevedore's, *i.e.,* SGS's, activities. Before his accident, Plaintiff conducted a walk-around of the barge to look for "trash or tripping hazards,"[7] and traversed the area where he had his accident at least three times.[8] However, Plaintiff had no recollection of seeing any frost on the CHEROKEE before he slipped and injured himself. Plaintiff's accident occurred 5 to 6 hours after he started his shift and at least that number of hours after the barge was turned over to SGS for stevedoring activities. Absent evidence that frost was present at the time the CHEROKEE was turned over for cargo operations, Plaintiff cannot establish that the vessel and its equipment were not in such condition that an expert and experienced stevedore could carry on stevedoring operations with reasonable safety or that there was a latent or hidden danger of which Targa was required to warn Plaintiff.[9] Therefore, the SJ Motion is **granted** regarding Plaintiff's turnover

---

[7]     *Id*. at 100:13-101:08.

[8]     *Id*. at 65:25-67:20.

[9]     To the extent Plaintiff argues that Targa had a duty to warn Plaintiff that frost could form on the barge at certain temperatures, the Court rejects this theory. A reasonably competent stevedore should anticipate that frost will form on a vessel, which is in the water, at night in near freezing temperatures during the month of January. Indeed, in his deposition, Plaintiff acknowledged he had previously seen

(continued…)

duty claim based on the presence of frost on the deck at the time of Plaintiff's accident.

## 2. Inadequate Lighting

In the SJ Motion, Targa argues that it is entitled to summary judgment on this issue because, as a matter of law, maintaining adequate lighting during cargo operations is the responsibility of the stevedore, not the vessel owner. Motion [Doc. # 41], at ECF 11. Plaintiff did not address Targa's arguments on this issue in his Response. In doing so, he has abandoned his turnover duty claim premised on inadequate lighting. *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Criner v. Texas--New Mexico Power Co.*, 470 F. App'x 364, 367 (5th Cir. 2012).

Plaintiff's inadequate lighting claim also fails on the merits. As an initial matter, Plaintiff acknowledged in his deposition that his SGS–issued flashlight provided him with "adequate light" to see what he was doing while working.[10] In addition, there is no evidence in the record that stevedoring operations on the CHEROKEE commenced during daylight hours. Indeed, all of the potentially

---

(continued…)
frost on barges while working in the Gulf of Mexico and agreed that, other than during the summertime, it is not unusual for barges in the Gulf of Mexico to have frost on them. Hamilton Dep. [Doc. # 41-2], 97:22-99:08.

[10]    Hamilton Dep. [Doc. # 41-2], 82:23-83:01.

relevant stevedoring activities reflected in the record, including those undertaken by Plaintiff,[11] took place at night. Plaintiff's accident occurred on an open deck.[12] Any absence or lack of lighting on the CHEROKEE's open deck at night undoubtedly is an open and obvious condition. Therefore, it cannot serve as a basis for a breach of the turnover duty.

Moreover, the Fifth Circuit has held that "maintaining adequate lighting during cargo operations is the responsibility of the stevedore." *Dow v. Oldendorff Carriers GMBH & Co.*, 387 F. App'x 504, 506–07 (5th Cir. 2010); *see also Burton v. Safmarine Container Lines N.V.*, No. CV H-12-3277, 2014 WL 12531516, at *2 (S.D. Tex. Jan. 13, 2014) ("A vessel owner has no duty to provide adequate lighting for longshoremen unless the vessel owner has contractually agreed to do so."); *Bias v. Hanjin Shipping Co.*, No. CIV.A. G-07-0338, 2009 WL 746051, at *5 (S.D. Tex. Mar. 18, 2009) ("courts have consistently held that a vessel owner has no duty to provide adequate lighting for longshoremen."). In this case, Plaintiff was injured during the course of cargo operations in an area of the ship that had been turned over to the stevedore. It was the stevedore's, not the vessel owner's, responsibility to provide Plaintiff with adequate lighting. A failure by the

---

[11]    *Id.* at 48:01-48:12.

[12]    Photograph of Accident Site [Doc. # 41-3].

stevedore to fulfill its obligations to its employee longshoreman is not a cognizable basis for a turnover duty claim against a vessel owner. Plaintiff cites no contrary authority. Accordingly, the SJ Motion is **granted** regarding Plaintiff's turnover duty claim based on inadequate lighting.

### 3. Non-Skid Material

Plaintiff's final argument regarding Targa's alleged turnover duty breach pertains to the lack of non-skid material on the CHEROKEE's deck. For purposes of the SJ Motion, the parties do not dispute Plaintiff's assertion that the part of the CHEROKEE deck where he slipped and fell was not coated with a non-skid material. There also is no dispute that the CHEROKEE lacked this non-skid material at the time the vessel was turned over to SGS for stevedoring operations.

Courts in this circuit have recognized "there is no legal basis under Fifth Circuit jurisprudence for Plaintiff's proposition that the absence of a non-ski[d] surface on a vessel deck constitutes an unreasonably dangerous working condition. In fact, district courts in the Fifth Circuit have held that 'it would be ludicrous to suggest that the vessel owner had a duty to resurface the portions of the vessel which it turned over to the stevedore.'" *Kitchens v. Tankers*, No. 4:14-CV-2088, 2016 WL 5171411, at *4 (S.D. Tex. Jan. 13, 2016), *aff'd sub nom. Kitchens v. Stolt Tankers B.V.*, 657 F. App'x 248 (5th Cir. 2016) (quoting *Thompson v. Cargill, Inc.*, 585 F. Supp. 1332 (E.D. La. 1984)); *see also Verret v. Dean Boats, Inc.*, No.

13

CIV. A. 87-1237, 1989 WL 81274, at *9 (E.D. La. July 20, 1989) ("As the *Thompson* court so succinctly and logically explained, experienced and expert longshoremen frequently perform their work on the decks of vessels which may be devoid of nonskid surfaces. To allow longshoremen to bring a negligence action against a vessel without non-skid surfaces would be paramount to allowing them to proceed on a theory of unseaworthiness, a right which was abrogated by the 1972 amendments to the LHWCA.") (internal quotation marks and citations omitted).

Similarly, "Plaintiff offers no case law to support its position that the absence of non-skid coating on the [CHEOKEE]'s deck constitutes a latent or hidden danger when coupled with dim lighting. In fact, district courts in the Fifth and other Circuits frequently hold that the absence of a non-skid coating on vessel surfaces does not give rise to a vessel owner's turnover duty to warn." *Id*. (citing *Thompson v. Cargill, Inc.*, 585 F. Supp. 1332; *Anastasiou v. M/T World Trust*, 338 F.Supp.2d 406 (E.D.N.Y 2005); *Giganti v. Polsteam Shipping Co.*, 997 F.Supp.2d 182, 193 (E.D.N.Y. 2013)); *see also Dias v. TMS Seacod GmbH & Co. KG*, 84 F. Supp. 3d 107, 111 (D.R.I. 2015) ("The absence of a non-skid surface . . . has generally not been found to violate the vessel owner's duty of care to the stevedore. Nor does it constitute a hidden hazard giving rise to a duty to warn the stevedore."); *Davis v. Pan Ocean Shipping Co.*, No. CIV.A.96-6103, 1999 WL 144095, at *5 (E.D. Pa. Mar. 15, 1999) ("This court similarly rejects the argument

14

that the non-skid surface by itself is a non-obvious hazard that warrants liability, absent some evidence that the defendant should have known that such a non-skid surface created the risk of accidents and that an experienced stevedore never would have worked on such a non-skid surface. No such evidence has been offered. To do otherwise would permit a plaintiff to proceed improperly on an unseaworthiness theory.")[13]

Precedent is clear that Plaintiff's claim for breach of the turnover duty due to a lack of non-skid material lacks merit. Plaintiff cites no authority in support of his claim. Nor does he attempt to distinguish the significant body of case law that forecloses his non-skid material turnover duty claim as a matter of law.

### 4. Henry S. Woods III's Putative Expert Opinions

Plaintiff tries to persuade the Court that the absence of non-skid material and other alleged deficiencies constitutes vessel negligence based on the report and affidavit of his expert, Henry S. Woods III. According to Plaintiff, Mr. Woods's opinions, at a minimum, create a genuine fact dispute for trial. Plaintiff's reliance on the opinions of Mr. Woods in this regard is unavailing.

---

[13] Even in the "active control" duty context, where the vessel owner actually exercises control over the area of the barge where the stevedore is operating, the Fifth Circuit "has not held that the lack of a non-skid surface alone is sufficient to give rise to a finding of liability under the active control duty exception." *Kitchens*, 657 F. App'x at 251.

The gravamen of Mr. Woods's conclusions in his affidavit and report are that Targa had an obligation to put non-skid coating on all of its deck surfaces and warn Plaintiff about the lack of non-skid material on the CHEROKEE.[14]  Affidavit of Henry S. Woods, III [Doc. # 43-1]; Expert Report of Henry S. Woods, III [Doc. # 43-2].  By the Exclusion Motion, Targa has moved to exclude Mr. Woods's "testimony, report, and opinions" in their entirety on the basis that Mr. Woods's opinions are irrelevant.  Targa contends his opinions and conclusions are irrelevant because they speak to Targa's alleged failures to do things that it had no duty to do as a matter of law, such as provide non-skid treated decks and adequate lighting. The Court concludes Targa's argument is persuasive and that Mr. Woods's "testimony, report, and opinions" should be excluded.

As discussed *supra*, district courts in the Fifth Circuit (and in other Circuits) repeatedly have held that the presence of decks on a vessel without non-skid coating, and the failure to warn of such exposed decks, does not constitute a violation of the turnover duty as matter of law.  *See, e.g., Thompson*, 585 F. Supp. at 1334 ("The lack of a non-skid surface on the deck of the vessel is a condition

---

[14]  Mr. Woods offers no opinions as to whether any of the alleged hazards he identifies, considered individually or collectively, either would preclude an expert and experienced stevedore from carrying on stevedoring operations with reasonable safety or is a danger that a reasonably competent stevedore should anticipate encountering.

which existed prior to the commencement of the stevedoring operations. As such, the vessel owner's only duty of care towards the stevedore was to exercise ordinary care in making the area safe for the expert and experienced stevedore, and to warn the stevedore of any hidden unsafe condition. The lack of a non-skid surface was not a hidden condition which would give rise to the vessel owner's duty to warn. Furthermore, it would be ludicrous to suggest that the vessel owner had a duty to resurface the portions of the vessel which it turned over to the stevedore. The Court takes judicial notice of the fact that experienced and expert stevedores have frequent occasion to perform their work on the decks of vessels which may not have non-skid surfaces."); *Dias v. TMS Seacod GmbH & Co. KG*, 84 F. Supp. 3d 107, 111 (D.R.I. 2015); *Giganti v. Polsteam Shipping Co.*, 997 F.Supp.2d 182, 193 (E.D.N.Y. 2013); *Davis v. Pan Ocean Shipping Co.*, No. CIV.A.96-6103, 1999 WL 144095, at *5 (E.D. Pa. Mar. 15, 1999). Mr. Woods's conclusions and averments that Targa should have ensured all of its decks were covered with non-skid material and warned Plaintiff that such material was absent from at least certain parts of the barge, is in direct contravention of nearly thirty years of consistent contrary jurisprudence on the subject. Accordingly, Mr. Woods's opinions are irrelevant to the question of whether the lack of non-skid material on the CHEROKEE gives rise a turnover duty breach in this case.[15] The other

---

[15] *See In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211 (5th Cir. 2010)
(continued…)

opinions he expresses in his affidavit and report are similarly irrelevant to the

question of whether Targa breached its turnover duty, or any other duty, in this

case.[16] Plaintiff has failed to raise a genuine dispute as to whether Targa breached

---

(continued…)

("Determination of the tortfeasor's duty is a question of law and thus a function of the court that we review de novo.").

[16] Mr. Wood's opinions that the CHEROKEE was not seaworthy are plainly irrelevant to Plaintiff's claims, which he has brought pursuant to Section 905 of the LHWCA. *See Scindia*, 451 U.S. at 164 ("Prior to 1972, a longshoreman injured while loading or unloading a ship could receive compensation payments and also have judgment against the shipowner if the injury was caused by the ship's unseaworthiness or negligence.. . . The 1972 Amendments, particularly by adding § 905(b), radically changed this scheme of things. . . . the longshoreman's right to recover for unseaworthiness was abolished"). So too is his opinion that Targa failed to provide sufficient lighting for nighttime work on exposed deck areas. That is because a lack of lighting at night is an open and obvious condition of the vessel and because "maintaining adequate lighting during cargo operations is the responsibility of the stevedore." *Dow*, 387 F. App'x at 506–07.

Regarding Mr. Woods's opinions that Targa failed to provide supervision or oversight, or ensure there was supervision, of vessel maintenance or vessel safety, the turnover duty applies to the shipowner's obligation before or at the commencement of the stevedore's activities. To the extent Mr. Woods opines Targa had an obligation to supervise or ensure supervision of ongoing cargo operations on the CHEROKEE, any failure to meet that obligation would not implicate the turnover duty. To the extent Mr. Woods opines that the failure to monitor or supervise occurred prior to the commencement of the stevedore's activities, the only "hazards" that Mr. Woods or Plaintiff has identified as resulting from that failure are the lack of non-skid coating and insufficient lighting. For reasons discussed above, neither of those "hazards" can serve as the basis of a turnover duty breach in this case. *Kitchens*, 2016 WL 5171411 at *4; *Dow*, 387 F. App'x at 506–07.

Finally, Mr. Woods's opinion that Targa failed to properly evaluate the "known hazards of working in exposed locations during full darkness conditions and various weather conditions," is not evidence of a turnover duty breach by Targa. The amount of light and weather in an exposed location are both open and

(continued…)

its turnover duty because of a lack of non-skid material on the deck of the CHEROKEE. Accordingly, the SJ Motion is **granted** regarding Plaintiff's turnover duty claim premised on the lack of non-skid surfaces on the barge.

### B. "Active Control" Duty

The second *Scindia* duty is the "active control" duty, which is applicable once stevedoring operations have begun. This duty requires that the vessel owner "exercise due care to avoid exposing longshoremen to harm from hazards that they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation." *Manson Gulf, L.L.C v. Modern Am. Recycling Serv., Inc.*, 878 F.3d 130, 134 (5th Cir. 2017) (quoting *Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156, 167 (1981)); *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 98 (1994). In the "active control" context, "[t]he key issue is whether the work area in question has been 'turned over' to the contractor." *Romero v. Cajun Stabilizing Boats Inc.*, 307 F. App'x 849, 851 (5th Cir. 2009). For example,

---

(continued…)

obvious. Moreover, neither Mr. Woods nor Plaintiff offers any evidence, or cites any authority, to support their implied argument that a reasonably competent stevedore should not anticipate those same "known" hazards of working on an exposed deck, at night, in near-freezing temperatures.

In sum, Mr. Woods's opinions and conclusions conflict with settled law or are irrelevant to the question of Targa's liability. In both cases, they are more prejudicial than they are probative of any wrongdoing by Targa in this case. *See* Fed. R. Evid. 403. Accordingly, the Court **grants** the Exclusion Motion.

the Fifth Circuit has held that for an "active control" duty to arise, "the vessel must exercise active control over the actual methods and operative details of the longshoreman's work." *Pledger v. Phil Guilbeau Offshore, Inc.*, 88 F. App'x 690, 692 (5th Cir. 2004). The Circuit also recently has held that the complete absence of vessel employees during stevedore operations evidences a lack of "active control" by the vessel owner. *See Manson Gulf,* 878 F.3d at 135 ("Though the mere presence of vessel employees is not necessarily indicative of active control, we have twice cited the complete absence of such personnel as evidence of the opposite—a lack of vessel control.")

The summary judgment record in this case conclusively establishes that the CHEROKEE was not under Targa's "active control" at any time during the stevedoring activities that resulted in Plaintiff's injuries. In support of its assertion that it did not exercise "active control" over CHEROKEE, Targa submitted the unrebutted affidavit of Michael Grace, its Commercial Transport Compliance Specialist. In his affidavit, Mr. Grace avers that no "Targa employees or agents were present on the Cherokee, at the TPC facility or about the tug on January 23 and 24, 2014. Moreover, no Targa employees or agents were present during the loading or unloading activities on January 23, 2015 and January 24, 2015, the date

of the incident."[17] Mr. Grace's averments are consistent with Plaintiff's deposition testimony that he did not encounter any Targa personnel while working on the CHEROKEE.[18]

In his Response, Plaintiff correctly acknowledges that "there were no known Targa individuals on the vessel at the time of the incident." Response [Doc. # 43], p. 4. However, Plaintiff contends that summary judgment in Targa's favor on this issue is not appropriate because he "has yet to depose a corporate representative of Targa to identify whether a Targa employee *should* have been on the vessel, or whether Targa maintained *some* control over the vessel." *Id.* This argument has no merit. Plaintiff filed his Response on March 15, 2018, one day before the discovery deadline in this case.[19] Plaintiff offers no explanation for his failure to depose a purportedly critical witness during the allotted discovery period. Nor has he moved to extend either the discovery deadline in this case or his deadline to respond to the SJ Motion so that he could take such a deposition. Indeed, the only

---

[17]     Affidavit of Michael Grace [Doc. # 41-4], at ECF 1.

[18]     *See* Hamilton Dep. [Doc. # 41-2], 45:14-45:16 ("**Q**: You didn't interact with any Targa employee on the date of this incident, did you? **A**: As far as I know, no."); *id.* at 138:23-138:25 ("**Q**: Did Targa have someone on the boat to monitor conditions while you were on there? **A**: No, sir."); *id.* at 139:04-139:07 ("**Q**: Did Targa have someone on the dock to monitor conditions on the barge? . . . **A**: No.").

[19]     *See* Docket Control Order [Doc. # 32], at ECF 1 (imposing March 16, 2018 discovery deadline).

evidence submitted by any party on the matter shows that Plaintiff chose not to depose any Targa employee.[20] The Court rejects Plaintiff's attempt to defeat summary judgment on the basis of speculation or hypotheticals. *See Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)) ("We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.").[21]

---

[20]    *See* Affidavit of Michael D. Murphy [Doc. # 44-1], ECF 1 ("The only two depositions which have been taken in this matter were secured by Targa; they are the deposition of Plaintiff and of Plaintiff's original orthopedic surgeon . . . I confirm that as of Monday, March 19, 2018, there have been no requests from Plaintiff's counsel for any depositions.").

[21]    To the extent Plaintiff argues that Mr. Woods's opinions are evidence of an "active control" duty breach by Targa, that argument is unavailing. First, neither Plaintiff nor Mr. Woods cites any evidence that Targa exercised any control over any portion of the CHEROKEE after the barge was fully turned over to SGS for stevedoring operations. Second, the Supreme Court has squarely rejected the notion that a vessel owner has a duty to supervise cargo operations. *See Scindia*, 451 U.S. at 168–69 ("we cannot agree that the vessel's duty to the longshoreman requires the shipowner to inspect or supervise the stevedoring operation. Congress intended to make the vessel answerable for its own negligence and to terminate its automatic, faultless responsibility for conditions caused by the negligence or other defaults of the stevedore. Cases holding the vessel liable on the ground that it owed nondelegable duties to protect the longshoremen from injury were rejected. It would be inconsistent with the [LHWCA] to hold, nevertheless, that the shipowner has a continuing duty to take reasonable steps to discover and correct dangerous conditions that develop during the loading or unloading process.") (internal citations omitted); *see also Duplantis v. Zigler Shipyards, Inc.*, 692 F.2d 372, 374 (5th Cir. 1982) ("once the stevedore begins its operations, the vessel owner has no duty to supervise its work or to inspect the area assigned to the stevedore, unless contract provision, positive law, or custom impose such a duty. In short, the vessel owner has no general duty to monitor the stevedore's operations, but is entitled to rely on the stevedore's expertise and reasonableness.").

In summary, Targa has demonstrated that it had no employees present on the CHEROKEE at the time of the incident in issue in this case. Plaintiff cites no evidence that creates a genuine dispute regarding the presence of Targa personnel on or around the CHEROKEE when Plaintiff suffered his injuries. Plaintiff also cites no evidence that creates a genuine dispute whether Targa otherwise exercised control over the CHEROKEE at that time. Instead, Plaintiff opposes summary judgment solely on the basis of potential evidence that he has not even attempted to obtain. Such conjecture does not create a genuine dispute with respect to the level of control, if any, Targa exercised over the CHEROKEE at the time of Plaintiff's accident. Accordingly, the SJ Motion is **granted** regarding Plaintiff's "active control" duty claim against Targa.

### C.    Duty to Intervene

The third and final *Scindia* duty, the duty to intervene, "concerns the vessel's obligations with regard to cargo operations in areas under the principal control of the independent stevedore." *Howlett*, 512 U.S. at 98. Specifically, "the duty to intervene imposes liability 'if the vessel owner fails to intervene in the stevedore's operations when he has actual knowledge both of the hazards and that the stevedore, in the exercise of obviously improvident judgment means to work on in the face of it and therefore cannot be relied on to remedy it." *Manson Gulf*, 878

F.3d at 134 (quoting *Burchett v. Cargill, Inc.*, 48 F.3d 173, 178 (5th Cir. 1995)) (internal quotation marks omitted).

Targa asserts that it is entitled to summary judgment on this claim for the same reason it is entitled to summary judgment on Plaintiff's "active control" duty claim: the complete absence of Targa personnel on the CHEROKEE at the time of Plaintiff's accident. Plaintiff does not address Targa's argument or any other potential theory of a duty to intervene claim in his Response. Therefore, Plaintiff has abandoned any claim against Targa premised on a duty to intervene. *Black*, 461 F.3d at 588 n.1; *Criner*, 470 F. App'x at 367.

To the extent Plaintiff has not abandoned this claim, it also fails on the merits. Given the complete absence of Targa personnel on the CHEROKEE while Plaintiff was performing his duties, there is no evidence that Targa had actual knowledge of any "obviously improvident judgment" on the part of Plaintiff or his longshoreman colleagues. This omission is fatal to Plaintiff's duty to intervene claim as a matter of law. *Manson Gulf*, 878 F.3d at 135; *see also Burchett v. Cargill, Inc.*, 48 F.3d 173, 179 (5th Cir. 1995) (affirming summary judgment on the duty-to-intervene issue because the vessel owner "had no personnel present at the job site who could have had knowledge of any peculiar dangers related to [the stevedore's] operations"). Consequently, the SJ Motion is **granted** regarding Plaintiff's duty to intervene claim against Targa.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendants Targa Transport LLC and Targa Resources LLC's Motion for Summary Judgment on all of Plaintiff's Claims [Doc. # 41] is **GRANTED**.  All claims asserted by Plaintiff in this case against Targa Transport LLC and Targa Resources LLC are **DISMISSED WITH PREJUDICE**.  It is further

**ORDERED** that Defendants Targa Transport LLC and Targa Resources LLC's Motion to Exclude the Opinions of Henry Woods, Plaintiff's Purported Marine Expert [Doc. # 45] is **GRANTED**.  It is further

**ORDERED** that Defendants Targa Transport LLC and Targa Resources LLC shall a file a motion for final judgment and attorneys' fees, which shall include the amount of attorneys' fees for which it is seeking indemnification from Defendant TPC Group Inc., with documentary support, on or before **May 21, 2018**. Defendant TPC Group Inc. must file any opposition to the motion for final judgment within 21 days of the motion for final judgment being filed.

SIGNED at Houston, Texas, this 30<u>th</u> day of **April, 2018**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

P:\ORDERS\11-2016\2614MSJ_Liab.docx  180430.1525